☑ Original ☐ Dupl

CLERK'S OFFICE
A TRUE COPY
Dec 13, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information about the location of the target cellular device with<br>account associated to telephone number 803-888-9188,<br>referred to in this affidavit as the "Target Cellular Device". The<br>service provider for the Target Cellular Device is T-Mobile. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. **23-M-520 (SCD)**<br><br>**Matter No. 2023R00370** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachments B-1 and B-2.

**YOU ARE COMMANDED** to execute this warrant on or before _____ 12-27-23 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Stephen C. Dries _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ 12-13-23. 9:30 am _____ *Stephen C. Dries*
*Judge's signature*

City and state: _____ Milwaukee, WI _____ Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B-1 to identify the location of the cellular device with account associated to telephone number 803-888-9188, whose wireless provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: The account associated to an unknown actor is the account to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; The account associated to telephone number 803-888-9188 is the account to which the device is to be attached; and Title 18 U.S.C. § 875, Interstate Threatening Communications are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

## ATTACHMENT B-1

### Particular Things to Be Seized
### with a Cell Site Simulator or Wi-Fi Geolocation Device

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other

cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT B-2

### Particular Things to Be Seized

### from Device Service Provider

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past thirty (30) days pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.      To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.      This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.      The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2

**CLERK'S OFFICE**
**A TRUE COPY**
Dec 13, 2023
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | Case No. 23-M-520 (SCD) |
| information about the location of the target cellular device with account associated to telephone number 803-888-9188, referred to in this affidavit as the "Target Cellular Device". The service provider for the Target Cellular Device is T-Mobile. ) ) ) ) | Matter No. 2023R00370 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachments B-1 and B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875 | Interstate Communication with Intent to Extort |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.

☒ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Heather Wright, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __12-13-23__

_____
*Judge's signature*

City and state: __Milwaukee, WI__

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Heather Wright, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular device with account associated to telephone number 803-888-9188, referred to in this affidavit as the "Target Cellular Device". The service provider for the Target Cellular Device is T-Mobile. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, as defined under Title 18 of the United States Code, I have been trained in a variety of investigative and legal matters, including the topics

of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. There is reason to believe the target cellular device is currently located in this district due to the site of all of the locations related to this investigation, being in the area of Milwaukee, Wisconsin.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that an unknown actor is using the Target Cellular Device to target victims. I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses, Title 18 U.S.C. § 875, Interstate Threatening Communications, committed by an unknown actor.

**PROBABLE CAUSE**

1.     On September 26, 2023, a friend, hereinafter, J.D., of deceased victim, hereinafter, A.Y. (20 years old), contacted the FBI. J.D. stated that at the beginning of September, A.Y. began communicating with a female named "Tory" via the dating application, PLENTY OF FISH, hereinafter "POF", followed by communication via text messages. "Tory" had the account handle "Tory03" on the application and, once they transitioned to text message, used the TextNow number 920-350-9112. A.Y. began exchanging photographs and messages with "Tory" via text message, which eventually transitioned into messages of a sexual nature. J.D. stated that later that month, A.Y. was eventually contacted by an individual identifying himself as "Tory's" father from telephone number 920-691-5560. This individual told A.Y. that "Tory" was underage and that unless he paid $9,600, he would report A.Y. to law enforcement. J.D. stated that A.Y. took his own life that evening, which was later determined to be the following day.

2.     On September 28, 2023, I met with the parents of A.Y. and obtained A.Y.'s cellular phone along with their consent to search the phone. A.Y.'s father, hereinafter, R.Y., stated that A.Y. had broken up with his girlfriend in August of 2023 and had joined the dating website POF in September 2023. R.Y. provided A.Y.'s email address as Adamy12987@gmail.com and stated that A.Y. regularly received notifications from POF through his email which led him to believe that A.Y.'s account was tied to that email address. R.Y. stated that he knew A.Y. had been receiving these notifications because following A.Y.'s death, R.Y. went through his computer and email as well as his phone. R.Y. also confirmed that in early July, A.Y. had met an actor on another online dating application that had attempted to extort money from A.Y. R.Y. stated that A.Y. and his mother had gone to the Muskego Police Department to report the threats. R.Y. stated that

nothing ever came of the threats nor the investigation so R.Y. was not sure if the two incidents were related in any way.

3.       In the review of A.Y.'s cellular phone, FBI agents were able to see that on September 9, 2023, A.Y. began communicating with "Tory," first on Plenty of Fish (POF), and later, via text message at 920-350-9112. The communication between "Tory" and A.Y. continued through until September 12, 2023. "Tory" told A.Y. that she resided in Green Bay, Wisconsin, and that she was 17 years old and would be turning 18 the following month. The messages were occasionally sexual in nature and several explicit photos were observed to have been sent by both A.Y. and "Tory." Within hours of the conversation starting on September 9, 2023, "Tory" was soliciting A.Y. for a prepaid phone card for her phone stating that she was running out of minutes and if A.Y. wanted to continue to talk with her, she would need assistance paying for minutes. "Tory" told A.Y. which Boost Mobile card to obtain and A.Y. purchased the card and sent an image of it to "Tory" the following day.

4.       On September 12, 2023, at 7:28 p.m. (CST), A.Y. received a message for the TextNow telephone number 920-691-5560, claiming to be the father of "Tory." The subject messaged that "his daughter" was underage and that "Tory" had been arrested when she attacked her teacher who was trying to take her phone away from her, due to the messages being sent by A.Y. The subject stated that he had to pay $9,600 to bail Tory out of jail. The subject stated that his wife wanted to have A.Y. arrested and registered as a sex offender. A.Y. apologized profusely and repeatedly stated that he was unaware that "Tory" was underage. A.Y. repeatedly stated that he would cease all communication and repeatedly asked what he could do to make things right. The subject initially stated that A.Y. should meet the subject and his wife at the Green Bay "station." A.Y. stated that he did not live in Green Bay; however, when A.Y. offered to walk into

his local police department and explain to them what had occurred, the subject stated that there was no need for A.Y. to do that but that A.Y. should be responsible for half of the bail money he and his wife had to post to bail "Tory" out of jail. A.Y. told the subject that he got paid the following day and would send the subject $600. The subject stated that he had a CashApp account and that A.Y. should send the money through CashApp the following day. The subject also asked A.Y. how often he got paid, and agreed that A.Y. would be sending him a bi-weekly payment of $600.

5.     On September 13, 2023, A.Y. committed suicide. R.Y. stated that he and his wife were absolutely devastated and had no idea what had been going on prior to A.Y. taking his own life. R.Y. stated that it was clear to him that the subject threatening A.Y. was a scammer that was extorting A.Y. for money.

6.     On October 13, 2023, I received records from POF requesting information pertaining to the account "Tory03." The subscriber information for the account indicated that the "Tory03" account was associated to the email address: torysm920@gmail.com, a registration IP of 172.58.255.111, a creation date of September 9, 2023, and the telephone number 803-394-0277.

7.     On October 18, 2023, I received records from T-Mobile relating to the Boost Mobile pre-paid phone card purchased by A.Y. and provided to "Tory." Within those records, I was able to observe that the card was activated on a phone utilizing the telephone number 803-888-9188 (**Target Cellular Phone**) and IMEI number 354563112021422.

8.     On October 24, 2023, I received records from Google, Inc., based upon my request for subscriber information for the email address "torysm920@gmail.com" and/or any account(s) associated with the cellular telephone numbers 803-394-0277 or 803-888-9188, or

IMEI 354563112021422 (including variations 35456311202142 and 354563112021420), and for the timeframe of July 1, 2023 through October 18, 2023.  Google returned results identifying the following email addresses: megansmith6023@gmail.com; ersmith678@gmail.com; melissadsm83@gmail.com; whitsm775@gmail.com; jessicasm89@gmail.com; jonathanf565@gmail.com; dianaguevare5@gmail.com; aquanajean@gmail.com; aaronssm83@gmail.com; and snakerobinson1025@gmail.com, as associated to the requested account information. A review of the data returned showed a pattern of connectivity inconsistent with regular telephone usage and a pattern of similar registration names using the last name "Smith" with different first names and a pattern of similar email addresses of first and last names.

6.      Based on the data received thus far, I believe that the subject may have utilized the above telephone number to victimize others in a similar manner as the subject victimized A.Y. Information obtained from this search warrant will be used to attempt to locate the account associated to an unknown actor within the next 30 days.

**AUTHORIZATION REQUEST & MANNER OF EXECUTION**

7.      I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

8.      Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

9.      In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

10.     In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, True Call, LDBoR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

11.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

12.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

13.     I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

14.     I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) beginning 30 days from the date the warrant is issued.

15.     I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past 30 days.

16.     I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

17.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

18.     I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

19.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

20.     A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

# **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B-1 to identify the location of the cellular device with account associated to telephone number 803-888-9188, whose wireless provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: The account associated to an unknown actor is the account to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; The account associated to telephone number 803-888-9188 is the account to which the device is to be attached; and Title 18 U.S.C. § 875, Interstate Threatening Communications are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

# ATTACHMENT B-1

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other

cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT B-2

## Particular Things to Be Seized

## from Device Service Provider

1.    Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.    All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past thirty (30) days pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.      To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.      This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.      The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2